IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| APPLE OF HIS EYE, INC., ) | Case No.: _____ |
| STEVE COHEN, in his individual ) | |
| capacity, and ALAN ) | |
| BUTTERWORTH, in his ) | |
| individual capacity, ) | |
| ) | |
| Plaintiffs, ) | |
| vs. ) | |
| ) | |
| CITY OF ST. LOUIS, MISSOURI, ) | |
| a political subdivision ) | |
| of the state of Missouri, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**PLAINTIFFS' MEMORANDUM OF LAW SUPPORTING
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**I.**

**STATEMENT OF FACTS**

The facts are sworn to as accurate and truthful as verified in Plaintiffs' Verified

Complaint for Declaratory Judgment, Preliminary and Permanent Injunctive Relief and Damages.

Plaintiffs rely upon those facts as if fully set forth herein. The challenged Written and Unwritten

Policies have been enforced and applied against Plaintiffs. Plaintiffs' counsel made every

attempt to resolve this matter by contacting the highest official in the City of St. Louis regulating parks – Mr. Skillman, Parks Commissioner. Another park official, Mr. Karel, explained the same Policies in the same manner to Plaintiffs' counsel thereby assuring the Policies are actually adopted and enforced by the City of St. Louis rather than merely an uninformed official's random statement.

Plaintiffs seek an Order enjoining Defendant from restricting and limiting their rights under the United States and Missouri Constitutions and the rights protected by Chapter 1 - Religious Freedom - Title 1 Section 1.302 of the Missouri Revised Statutes, to distribute literature and express their religious views in the public parks within the City of St. Louis, Missouri. The Order sought would enjoin Defendant from intimidating, harassing, threatening, coercing, arresting or causing to have Plaintiffs arrested, or otherwise restricting Plaintiffs' right to distribute literature and express their religious views in the public parks within the city.

## II.

### STANDARD FOR INJUNCTIVE RELIEF

The Eighth Circuit Court of Appeals has stated that injunctive relief will be granted if the moving party can satisfy four criteria: (1) that the moving party likely will ultimately prevail on the merits of the claim; (2) the threatened injury is irreparable in nature; (3) the potential harm to the moving party will outweigh any potential injury to the opposing party; and (4) an injunction is in the public interest. *See Straights v. Osseo*, 471 F.3d 908, 911 (8th Cir. 2006).

Plaintiffs satisfy all the above criteria because Defendant's Written and Unwritten Policies, customs, and practices infringe on Plaintiffs' constitutional rights to freedom of speech

and free exercise rights by prohibiting all non-disruptive literature distribution, including Plaintiffs' free religious literature, and Plaintiffs' expression of their religious views within the public parks in the City of St. Louis, Missouri.

Defendant cannot carry its burden of establishing the constitutionality of such constitutionally infirm and overbroad Policies. Such Policies cannot survive constitutional scrutiny because they do not provide adequate notice of what conduct is prohibited while granting unfettered discretion to Defendant to determine what speech will be allowed. Further, the Policies cannot withstand a constitutional attack because they serve as prior restraints on free speech lacking the requirements of review set forth by the United States Supreme Court. This Court should grant Plaintiffs' prayer for a Preliminary Injunction.

### III.

### PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF PREVAILING ON THE MERITS.

#### A. Defendant's Policies And Actions Violate Plaintiffs' Free Speech Rights.

The United States Supreme Court applies a three-pronged analysis for evaluating free speech cases: 1) determine if the speech in question is protected under the First Amendment; 2) identify the nature of the forum in which the speech would take place; and 3) assess whether the government's exclusion of the speech from the forum is justified by the requisite standard. *See Cornelius v. NAACP Legal Defense and Educ. Fund*, 473 U.S. 788, 797 (1985).

### *1. Religious speech, through the distribution of literature and expression of religious views, is fully protected by the First Amendment.*

Religious speech is fully protected from government suppression by the First Amendment:

> Our precedent establishes that private religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression. Indeed, in Anglo-American history, at least, government suppression of speech has so commonly been directed *precisely* at religious speech that a free-speech clause without religion would be *Hamlet* without the prince.

*Capitol Square Review and Advisory Board v. Pinette*, 515 U.S. 753, 760 (1995); *see also Martin v. City of Struthers*, 319 U.S.141, 149 (1943) (Murphy, J., concurring) ("nothing enjoys a higher estate in our society than the right given by the First and Fourteenth Amendments freely to practice and proclaim one's religious convictions"). Furthermore, it is axiomatic that the distribution of religious literature is a form of communication protected by the First Amendment. *See Jews for Jesus v. Board of Airport Comm'ns*, 785 F. 2d 791 (9th Cir. 1986), *aff'd on other grounds*, 482 U.S. 569 (1987); *United States v. Grace*, 461 U.S. 171, 176 (1983).

Having resolved that Plaintiffs' free speech activities are protected by the First Amendment, the next step in the test is to identify the nature of the forum in which the speech would take place. *See Cornelius*, 473 U.S. at 797.

### *2. Defendant's Policies regulate speech activities in traditional public fora.*

First Amendment precedent contemplates three types of government property – or fora – in which speech occurs: (1) traditional, (2) designated or limited, and (3) non-public. *See Cornelius*, 473 U.S. at 802. Of importance in this case is traditional public fora. It is well settled that public streets, public sidewalks, public squares, public parks, public grounds and

other public right-of-ways are the "quintessential" public fora. *See Frisby v. Schultz*, 487 U.S. 474, 481 (1988); *see also Fair v. Nebraska Dept. Of Social Services*, 111 F.3d 1408, 1418 (8th Cir. 1997). "[T]ime out of mind," such locations have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Boos v. Barry*, 485 U.S. 312, 318 n(1988); *see also Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939) (plurality opinion).

The Supreme Court has been consistently clear that traditional public fora occupy "a special position in terms of First Amendment protection" and "the government's ability to restrict expressive activities [in it] is very limited.'" *Boos*, 485 U.S. at 318) (quoting *United States v. Grace*, 461 U.S. 171, 180 (1983)). The constitutionally protected status of expression and assembly in traditional public fora is uniformly recognized. *See, e.g., Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672 (1992).

Once it is determined that the speech is protected and that the speech is being conducted in traditional public fora, then the powers of governing authorities to "limit expressive activities are sharply circumscribed." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). The extent to which the government may limit or exclude speech and assembly from the fora depends upon whether its justification for exclusion satisfies the requisite standard of constitutional scrutiny for that fora. *Id.*, at 45-46. Short of total exclusion of the speaker, the government may impose reasonable time, place, and manner restrictions on speech in traditional public fora. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

### B. Defendant's Written and Unwritten Policies And Actions Are Not Reasonable Time, Place, And Manner Restrictions.

In order for a time, place, and manner restriction on expressive activity in traditional public fora to pass constitutional muster, the restriction must: (1) be content-neutral; (2) serve a significant governmental interest; (3) be narrowly tailored to serve that interest; and, (4) leave open ample alternative channels of communication. *See Grace*, 461 U.S. at 177. Within traditional public fora, the government's authority to restrict speech is at its minimum. *Gaudrya Vaishrava Soc'y v. City and County of San Francisco*, 952 F.2d 1059, 1065 (9th Cir. 1991). The Defendant bears the burden of proving that its Policies meet constitutional requirements. *See Davenport v. City of Alexandria*, 710 F.2d 148, 152 n.8 (4th Cir. 1983) ("a governmental entity must always be prepared to come forward with a strong factual justification for its actions"). In this case, Defendant cannot meet its burden of proving that its Policies pass constitutional scrutiny.

#### 1. *Defendant's Policies are content-based regulations.*

A valid time, place, and manner restriction is judged under the standards set out in *Ward, supra*. Such a regulation which will only be upheld if: (1) the ordinance is justified without relying on the content of the speech involved; (2) the ordinance is narrowly tailored to meet a significant government interest; and, (3) the ordinance leaves open sufficient alternative avenues of communication. *Ward*, 491 U.S. at 791. Defendant's Policies fail to meet even the first requirement of content-neutrality and, therefore, fail to pass the requisite standard.

### Prohibition of Speech Under Both Policies

St. Louis City Revised Code Title 22, Chapter 22.16.100 Advertisement (Defendant's Written Policy), prohibits any person from parading, exhibiting or distributing "any advertisement, circular or handbill in or adjoining any public park, place or square." Defendant's agents Park Ranger Thomas Landwehr and Doe 1 threatened to arrest Plaintiffs based on both Defendant's Written and Unwritten Policy. Plaintiffs were threatened with arrest after they ceased distributing literature and only because Park Ranger Landwehr and Doe 1 stated that the public did not like Plaintiffs' speech. Plaintiffs were threatened with arrest only because other park goers were offended by Plaintiffs' speech.

In addition, an employee in Tower Grove Park Director John Karel's office ("Eve"), stated to Plaintiffs' counsel that literature distribution could be allowed based on the Director's discretion. Eve stated to Plaintiffs' counsel that the literature should be submitted to Director Karel for his approval. Eve further stated that religious literature distribution would never be allowed, but it would be acceptable if someone wanted to distribute literature related to AIDS or Diabetes.

These facts clearly reveal the Defendant's content-based regulation of speech in public parks thereby failing to meet the first prong of the requisite *Ward* test because they distinguish between allowed or banned speech based on content. Plaintiffs' penalty for a violation of Defendant's Policies is arrest and incarceration.

Pursuant to the Unwritten Policy, Defendant must necessarily review the message to determine if it is banned under the "religious literature" prohibition. Because Defendant must review the message to determine if it is banned, it must necessarily engage in content review.

Further, Defendant's Unwritten Policy of allowing Plaintiffs to express their religious message to the pubic as long as no one complains about Plaintiffs' message cannot survive the requisite scrutiny applied to content-based regulations. Defendant will arrest Plaintiffs when the public expresses disdain for the content of Plaintiffs' message. If Plaintiffs were to approach a park goer and say "Hello" such expression would not warrant arrest because such pleasantries usually do not receive complaints. On the other hand, if Plaintiffs were to approach a park goer and said "Hello, I believe in Jesus and would like to share the Gospel message," then Plaintiffs could be arrested and incarcerated when a park goer complains – as has already occurred in this case.

Defendant's Policies will only be upheld if Defendant can prove two prongs under the strict scrutiny test: (1) it is necessary to serve a compelling governmental interest; and, (2) it is narrowly tailored to accomplish that purpose. *See Boos*, 485 U.S. at 321. Defendant cannot prove that the Policies survive such exacting review. The Supreme Court held "The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992).

**Prohibition of Literature Distribution**

"Defendants cannot exclude all literature distribution merely by claiming that the public park is strictly for the enjoyment of other park goers and so no other free speech activities are permitted. This is content and viewpoint discrimination and is *per se* impermissible." *Wickersham v. Columbia*, Case No. 05-4061-CV-C-NKL, Injunction page 55 (W.D. Mo. May 18, 2005).

### 2. *Defendant's Policies are not supported by any compelling state interest.*

Defendant cannot offer any compelling interest to justify such bans on speech. Defendant may proffer an argument that banning words that offend park goers advances a legitimate government interest. In *Terminiello v. Chicago*, 337 U.S. 1 (1949), the Supreme Court reviewed various convictions after the lower court concluded that the defendants' speech was punishable if "it stirs the public to anger, invites dispute, brings about a condition of unrest, or creates a disturbance, or if it molests the inhabitants in the enjoyment of peace and quiet by arousing alarm." *Id.*, at 3. Reversing, the Supreme Court held:

> [a] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech . . . is . . . protected against censorship or punishment . . . . There is no room under our Constitution for a more restrictive view.

*Id.*, at 4-5.[1] Defendant's feeling that certain words might offend the public does not render the speech unprotected. "The fact that society may find speech offensive is not a sufficient reason for suppressing it. Indeed, if it is the speaker's opinion that gives offense, that consequence is not a reason for suppressing it. Indeed, if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection." *Simon & Schuster, Inc. v.*

---

[1] "It is settled law that a state may not directly prohibit offensive speech." *See Edwards v. South Carolina*, 372 U.S. 229, 237, 83 S.Ct. 680 (1963); *Street v. New York*, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969); *Cantwell v. Connecticut*, 310 U.S. 296, 308, 60 S.Ct. 900, 905, 84 L.Ed. 1213 (1940).

*Members of New York State Crime Victims Bd.*, 502 U.S. 105 (1991) (editing marks and citations omitted).

Additionally, Defendant may allege its reasoning for banning all literature distribution is to prevent littering. Such a justification does not support a compelling government interest. The Supreme Court in *Schneider v. State*, 308 U.S. 147, 162 (1939), stated:

> We are of opinion that the purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it. Any burden imposed upon the city authorities in cleaning and caring for the streets as an indirect consequence of such distribution results from the constitutional protection of the freedom of speech and press. This constitutional protection does not deprive a city of all power to prevent street littering. There are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the streets.

### 3. *Defendant's Policies are not narrowly tailored.*

A total ban on literature distribution is not narrowly tailored to serve any government interest. Such a ban is overinclusive as it applies to 1 person distributing literature or 100 people. It is hard to imagine how literature distribution would create a greater danger of causing litter than would the public's general use of the park. Defendant's Policies fail to pass the necessary strict scrutiny test and are, therefore, unconstitutional.

### C. Defendant's Policies Violate Due Process and Equal Protection Because They Unconstitutionally Allow Unbridled Discretion to Ban Speech.

An additional constitutional flaw of Defendant's Policies is the vesting of unbridled discretion to the decisionmaker. Time, place, and manner restrictions quickly become unconstitutional when the government attempts to regulate speech without first implementing traditional safeguards to protect against undue discretion and lack of clarity. *See Saia v. People of State of New York*, 334 U.S. 558, 562 (1948). Facial challenges are decided "in the First

Amendment context where the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad." *FW/PBS v. City of Dallas*, 493 U.S. 215, 223 (1990). It is well settled that facial challenges are appropriate in two distinct circumstances: (1) where the licensing scheme vests unbridled discretion in the decisionmaker, and (2) where the regulation is challenged as overbroad. *See id.*

The Supreme Court has consistently ruled that any law is unconstitutional which allows unbridled discretion in enforcement. *Kolender v. Lawson*, 461 U.S. 566, 575 (1974) (holding all laws must provide "minimum guidelines to govern law enforcement" to prevent the possibility of discretionary enforcement). *American Jewish Congress v. City of Beverly Hills*, 90 F.3d 379, 385 (9th Cir. 1996) (*en banc*), struck down a similar permitting scheme, holding: "The *ad hoc* and structureless nature of the City's permitting process leaves open the possibility of improper discrimination by the City."

> [A] law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship. This danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official.... [W]e have often and uniformly held that such statutes or policies impose censorship on the public or the press, and hence are unconstitutional, because without standards governing the exercise of discretion, a government official may decide who may speak and who may not based upon the content of the speech or viewpoint of the speaker.

*Id.*, (citing *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 763-64, 108 S.Ct. 2138, 2147, 100 L.Ed.2d 771 (1988)).

It is not necessary that Defendant has discriminated against Plaintiffs by enforcing Defendant's Policies against them (although in this case it has been enforced). The Supreme Court has clearly and consistently ruled that it is absolutely unnecessary for a law that allows

unconstitutional discretion to also have resulted in an incident of actual discrimination for that law to be found unconstitutional. *See Thornhill v. Alabama*, 310 U.S. 88, 97 (1940). Proof of repeated discrimination is not considered necessary because it is "not merely the sporadic abuse of power by the censor" that our Constitution means to prevent, but also the "pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion." *Thornhill*, 310 U.S. at 97 (citing *Near v. Minnesota*, 283 U.S. 697, 713 (1931)). The issue presented when challenging a policy on the grounds that it "delegates overly broad discretion to the decision maker rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance preventing him from doing so," *Forsyth County v. The Nationalist Movement*, 505 U.S. 123, 133 n.10. (1992).

> Without these guideposts, *post hoc* rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression.

*American Jewish Congress*, 90 F.3d at 386 (quoting *City of Lakewood*, 486 U.S. at 758, 108 S.Ct. at 2144).[2] Defendant's Policies unconstitutionally vest unbridled discretion in the city to ban words that the public might complain about and allow the distribution of literature based only on the Director's discretion. There are not even minimal guidelines to prevent the possibility of discretionary enforcement because there are no guidelines at all. "[T]he prohibition against unbridled discretion is a component of the viewpoint-neutrality requirement." *Southworth*

---

[2] This same analysis operates to find Defendant's Policies void for vagueness. A fundamental principle of this nation's constitutional jurisprudence is that no person shall be deprived of life, liberty, or property without due process of law. *See* U.S. Const., amends. V, XIV. An ordinance runs afoul of the due process clause and "is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

*v. Bd. of Regents of the Univ. of Wis. Sys.*, 307 F.3d 566, 579 (7th Cir. 2002). Limits on official discretion are necessary to prevent "the risk of self-censorship, where the plaintiff may edit his own viewpoint or the content of his speech to avoid governmental censorship; and ... the risk that the decision-maker will use its unduly broad discretion to favor or disfavor speech based on its viewpoint ...." *Id.* at 579.

### *1. Defendant's Policies are substantially overbroad.*

A policy is unconstitutionally overbroad if, in addition to proscribing activities that are not constitutionally protected, it also sweeps within its coverage constitutionally protected speech and activities. *See Kolender*, 461 U.S. at 358 n.8; *Thornhill*, 310 U.S. 88. Defendant's Policy, by its very existence, causes others not before this Court to refrain from constitutionally protected speech or expression. *See Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). This factor of intimidating citizens from exercising their First Amendment rights is frowned upon by the Courts and is referred to as the policy's "chilling effect." *See, e.g., Arnett v. Kennedy*, 416 U.S. 134, 230-31 (1974).

Furthermore, a total ban on all literature distribution within the City of St. Louis parks, even if the goal of the Policy is proper, is *per se* overbroad, and, therefore, unreasonable. *See Board of Airport Commissioners of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987). This ban applies to 1 or 100 people wishing to distribute literature. As such, it should be facially invalidated. *See New York v. Ferber*, 458 U.S. 747, 773 (1982). By banning all literature distribution in the public parks, the city has drastically restricted the venues available for free speech. The second prong in the *Ward* test is the requirement that the restriction be "narrowly

tailored to meet a significant government interest." *Ward.*, 491 U.S. at 791. As discussed above, Defendant's Policies are not drawn with narrow specificity.

### 2. *Defendant's Policies fail to provide equal protection of the laws because they foster unbridled discretion.*

As discussed above, Defendant's Policies deprive Plaintiffs of fundamental rights because free speech is "among the fundamental personal rights and liberties which [is] protected by the Fourteenth Amendment from invasion by state action." *Lovell*, 303 U.S. at 450. Fostering unequal treatment and vesting unbridled discretion violates equal protection. *See Burlington Northern R. Co. v. Ford*, 504 U.S. 648 (1992). "It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion." *Thornhill*, 310 U.S. at 97.

### IV.

### PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF RELIEF IS DENIED AND DEFENDANT WILL SUFFER NO HARM WITH AN INJUNCTION.

The Supreme Court has repeatedly held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Any harm to Defendant resulting from the granting of injunctive relief is minimal, if not nonexistent. When weighing actual harm against mere speculative allegations of harm, the pendulum swings in favor of granting relief.

### V.

### INJUNCTIVE RELIEF WILL SERVE THE PUBLIC INTEREST.

The protection of constitutional rights is of the highest public interest. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976). Protecting constitutional rights is *ipso facto* in the interest of

the general public. *Machesky v. Bizzell*, 414 F.2d 283, 288-90 (5th Cir. 1969) ("First Amendment rights are not private rights . . . so much as they are rights of the general public.").

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray this Honorable Court enter the following relief:

1. That this Court issue a preliminary injunction restraining and enjoining Defendant and Defendant's agents, employees, representatives, and all persons acting in concert, or participating with them, from engaging directly or indirectly in any act that would result in the harassment, and/or threat of detention of Plaintiffs and/or Plaintiffs' agents and associates distributing literature and expressing their free speech rights, in the public parks in the City of St. Louis, Missouri;

2. That this Court issue a preliminary injunction restraining and enjoining Defendant and Defendant's agents, employees, representatives, and all persons acting in concert, or participating with them, from enforcing Defendant's Written and Unwritten Policies, customs and practices in any manner that violate Plaintiffs' rights;

3. That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's orders and grant such other and further relief as this Court deems equitable and just in the circumstances.

Respectfully submitted this 25TH day of April, 2008.

Kevin H. Theriot, Esq.
Missouri Bar No. 55735
Joel Oster, Esq.
Missouri Bar No. 50513
**ADF KANSAS CITY REGIONAL SERVICE CENTER**
15192 Rosewood
Leawood, Kansas 66224
(913) 685-8000 - voice
(913) 685-8001 - facsimile
ktheriot@telladf.org
Co-Counsel for Plaintiffs

Frederick H. Nelson, Esq.
Florida Bar No. 0990523
**AMERICAN LIBERTIES INSTITUTE**
P.O. Box 547503
Orlando, FL 32854-7503
(407) 786-7007 - voice
(407) 786-2978 - facsimile
Rick@ALI-USA.org
Lead Trial Counsel for Plaintiffs
(pending *pro hac vice* admission)