IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| APPLE OF HIS EYE, INC., STEVE COHEN, and ALAN BUTTERWORTH, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:08-CV-00592 HEA |
| v. | ) ) | |
| CITY OF SAINT LOUIS, MISSOURI, | ) ) | |
| Defendant. | ) | |

## **OPINION AND ORDER OF PRELIMINARY INJUNCTION**

This Court, having heard evidence on Plaintiffs' Motion for Preliminary Injunction, now finds as follows:

### **Procedural Background**

On April 28, 2008, Plaintiffs filed a Verified Complaint against Defendant City of St. Louis ("City"). Among the claims in said Complaint are the following:

a. That a provision in the City's Revised Code, known and numbered as § 22.16.100, R.C.St.L. (1994), which states, "No person shall parade, exhibit or distribute any advertisement, circular or handbill in or adjoining any public park, place or square" (hereinafter "Written Policy"), is unconstitutional.

b. That the City has a policy of allowing literature distribution at the discretion of the Director of Tower Grove Park, John Karel (hereinafter

"Unwritten Policy").

On May 30, 2008, City filed an Answer. In its Answer, the City admitted the existence of the verbiage of the provision quoted above as the "Written Policy." The City denied the allegations as to the "Unwritten Policy."

Plaintiffs' allegations stem from an incident alleged to have occurred on June 25, 2006, during an event called "PrideFest," which focuses on the gay and lesbian community. This annual event is held in Tower Grove Park, in the City of St. Louis. Plaintiffs claim they were prevented from distributing their religious literature and from publicly expressing their religious views within the confines of Tower Grove Park on that date, and were threatened with arrest by officials of the City. Plaintiffs claim under the First Amendment, they had a right to distribute religious literature and to publicly express their religious views within Tower Grove Park.

Plaintiffs moved for a Preliminary Injunction to enjoin the enforcement of the Written Policy and the Unwritten Policy. It is noted that the 2008 PrideFest is scheduled for June 28 and 29, 2008, in Tower Grove Park.

On June 24, 2008, this Court held a hearing on Plaintiffs' Motion for Preliminary Injunction.

## Standard of Review

When considering a motion for a preliminary injunction, a district court

weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest. *Pottgen v. Missouri State High Sch. Activities Assoc.*, 40 F.3d 926, 928 (8th Cir. 1994), citing *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *Straights v. Osso*, 471 F.3d 908, 911 (8th Cir. 2006).

## Findings of Fact

As to the allegations of the "Written Policy," the Court finds as follows:

a. Plaintiffs have shown a probability of success on the merits. City's Code provision § 22.16.100, R.C.St.L. (1994) arguably purports to prohibit the distribution of any handbill in a City park. A city park is a traditional public forum and therefore open to all who may enter for peaceable purposes. *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983). Therefore, a city park is open to all who may enter for peaceable and Constitutionally protected purposes. "In these quintessential public forums, the government may not prohibit all communicative activity." *Id.* Therefore, Plaintiffs have shown a probability of success that the blanket prohibition is unconstitutional.

b. Plaintiffs have shown the threat of irreparable harm absent the injunction. It is well-settled law that a "loss of First Amendment freedoms, for

even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). There can be no sum, thing, or form of remuneration that might substitute, compensate, or repair a right in its entirety once taken.

    c. Balancing the harm to Plaintiffs versus the injury that would be inflicted on other parties if the injunction issues, the Court notes the allegation of the Complaint, that City officials apparently took action towards Plaintiffs at PrideFest in 2006 only when a person identified by Plaintiffs as a festival organizer objected to the officials about the Plaintiffs' activities. While there may be attendees at PrideFest 2008 who may also object to Plaintiffs' distribution of religious literature or expression of religious views, their "injury," namely, the suffering of viewpoints with which they may disagree, is outweighed by the restriction of Plaintiffs' First Amendment right to express those views in a public forum. The very essence of the Spirit of the First Amendment embraces the tolerance of various and even divergent viewpoints and opinions. As such, the minimal imposition upon the Pridefest attendees, who are themselves enjoying the protections of their first amendment rights, cannot overcome the irreparable harm suffered by Plaintiffs.

    d. The public interest, separate and apart from the interest of any particular group, is in enhancing and preserving the attractiveness of City parks

and preserving public safety and order in and around City parks. The Court finds that enjoining the enforcement of § 22.16.100, thereby allowing Plaintiffs to distribute their religious literature and express their religious views in a City park, does not significantly impinge on the public interest, as long as the City retains the authority to enforce other Code provisions which are content-neutral reasonable time, place and manner restrictions, in order to maintain public safety and order.

As to the allegations of the "Unwritten Policy," the Court finds as follows:

a. Plaintiffs have not shown a probability of success on the merits. Defendant City has denied the allegations that there was or is a practice whereby the Director of Tower Grove Park has discretion to allow or disallow the distribution of literature as he determines. Plaintiffs have not shown that such a practice existed, or that it was a basis for keeping Plaintiffs from distributing their religious literature or expressing their religious views in Tower Grove Park.

b. Plaintiffs have not shown the threat of irreparable harm absent an injunction against this alleged Unwritten Policy. By enjoining the enforcement of § 22.16.100, the Written Policy, this Court has effectively removed the barrier which prohibited Plaintiffs from distributing their religious literature or expressing their religious views in a City park. Thus, there is no further threat of

irreparable harm by way of this alleged Unwritten Policy.

   c. Balancing the harm to Plaintiffs versus the injury that would be inflicted on other parties if the injunction issues, there is no further harm to Plaintiffs, who by the terms of this Order enjoining enforcement of § 22.16.100, will be able to distribute their religious literature and express their religious views in a City park.

   d. The public interest remains the same -- enhancing and preserving the attractiveness of City parks and preserving public safety and order in and around City parks – and is largely unaffected by whether or not the alleged Unwritten Policy is enjoined.

   The City has shown the existence of several other Code provisions which apply either to handbill distribution generally or to activities in or around City parks. The Court finds these Code provisions are content-neutral reasonable time, place and manner restrictions, with the exception of that portion of Section 11.18.170 which requires the person handing out handbills or samples to be responsible for the proper disposal of his handbills or samples which are disposed of on the ground by receivers of such hand bills or samples and to be responsible for collecting and properly disposing of all such discarded handbills or samples within a one hundred foot radius of any particular location where said person is distributing handbills or samples.  See *Schneider v. State of New Jersey, Town of Irvington,* 308

U.S. 147, 60 S.Ct. 146 (1939).

WHEREFORE, on the basis of the foregoing, this Court orders, adjudges and decrees as follows:

a. Defendant, its officers, agents, employees, representatives and all persons acting in concert, or participating with them, are hereby restrained and enjoined from enforcing § 22.16.100, R.C.St.L. (1994), which states: "No person shall parade, exhibit or distribute any advertisement, circular or handbill in or adjoining any public park, place of square."

b. Defendant, its officers, agents, employees, representatives and all persons acting in concert, or participating with them, are hereby ordered to instruct the law enforcement officers who will be present in and/or near Tower Grove Park at PrideFest 2008 of the terms of this Order, and to instruct them as to the implementation of the terms of this Order.

c. Defendant, its officers, agents, employees, representatives and all persons acting in concert, or participating with them, are hereby ordered to meet with the PrideFest 2008 organizers prior to the event scheduled for June 28 and 29, 2008, at Tower Grove Park for the purpose of informing the organizers of the terms of this Order, and to instruct said organizers that Plaintiffs' distribution of religious literature and/or expression of religious beliefs in said Park, in and of themselves, do not constitute a basis for law enforcement authorities to take

actions that would restrict Plaintiffs' activities.

d. Defendant retains the right to enforce ordinances and provisions of its City Code which are content-neutral reasonable time, place and manner restrictions, in its public parks, places or squares, including the following:

A provision which governs handbill distribution in or upon a vehicle, § 11.18.180, R.C.St.L. (1994);

A provision which prohibits a person from "participat[ing] or conduct[ing] an exhibition or demonstration … on any street or abutting premises … in consequence of which there is such a gathering of persons or stopping of vehicles as to impede either pedestrians or vehicular traffic," § 17.16.270, R.C.St.L. (1994);

A provision which provides for a curfew in City parks between the hours of 10:00 p.m. and 6:00 a.m., § 22.18.010, R.C.St.L. (1994).

e. Defendant, its officers, agents, employees, representatives and all persons acting in concert, or participating with them, are hereby restrained and enjoined from enforcing that portion of § 11.18.170 which requires the distributor of handbills to be responsible for the proper disposal of discarded handbills or samples within a one hundred foot radius of the distribution.

The terms of this Order shall remain in full force and effect

throughout the duration of this action in this Court.

This Court shall have the power to enforce the terms of this Order by contempt order and/or sanctions as necessary, in the Court's discretion.

Dated this 24th day of June, 2008.

_____
    HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE